**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| SALAHUDDIN F. SMART, : | |
| : | Civil Action No. 07-6103 (RMB) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| TOWNSHIP OF BERLIN, JOSEPH : | |
| JACKSON, SERGEANT, DONALD : | |
| STEEN, PATROLMEN, MICHAEL : | |
| HAYDEN, CHIEF OF POLICE, : | |
| et al., : | |
| : | |
| Defendants. : | |

---

**APPEARANCES:**

Salahuddin F. Smart
125 S. White Horse Pike
Lynnebrook Gardens, Apt. 52
Lindenwold, New Jersey 08021
   Pro Se Plaintiff

Robert E. Campbell, Esquire
White and Williams, LLP
Libertyview
457 Haddonfield Road, Suite 400
Cherry Hill, New Jersey 08002
(856) 317-3600
   Attorney for Defendants

**BUMB**, District Judge:

**Introduction**

  This matter comes before the Court upon Defendants', the Township of Berlin, Sergeant Joseph Jackson, Patrolman Donald

Steen, and Chief of Police Michael Hayden, motion for summary judgment.

**Factual Background**

This matter arises out of a traffic stop on February 14, 2007, involving the Plaintiff, Salahuddin F. Smart, and Defendants Patrolman Steen and Sergeant Jackson of the Berlin Township Police Department.  Plaintiff, who was traveling with a passenger, Jennifer Ondusko, does not dispute that he was speeding prior to the traffic stop.  According to Patrolman Steen, he informed Smart that he was being pulled over for speeding and asked Plaintiff for his driver's license.  Smart informed the officer that he did not have a license, but that Ms. Ondusko did.  Patrolman Steen, who had apparently run the tags, also inquired whether Ms. Ondusko was Amanda Clark, the registered owner of the vehicle.[1]

Smart alleges that he was then asked to get out of the car and was then pressured into signing a "consent to search" card by Defendants Steen and Jackson who joined Patrolman Steen at the scene.  Plaintiff alleges that the Defendants violated the consent to search standards and the subsequent search of the vehicle was unconstitutional.  Plaintiff also alleges that he was a victim of racial profiling.  He further alleges that the Chief

---

[1] Smart testified in his deposition that he purchased the car from Clark and he gave her the finances to purchase the insurance.

of Police had an illegal custom or policy of encouraging consent-based searches based on race.  In other words, Plaintiff alleges, the Chief allowed a policy that targeted African Americans to sign consent forms.  Finally, Plaintiff alleges that the Township of Berlin allowed an illegal custom or policy that discriminated against African Americans by seeking consent searches when no legal basis existed to search.

Defendants deny that Smart was asked to sign a consent to search card and instead maintain that the search was based upon a reasonable articulable suspicion of criminal activity and/or probable cause and that Smart verbally consented to the search.  They deny the existence of any illegal custom or policy.

**Standard**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving

---

[2] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."³ Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**Discussion**

Defendants have moved for summary judgment, relying, in part, upon the deposition testimony of Smart as well as the individual Defendants' answers to interrogatories. Plaintiff has not opposed the pending motion. Defendants Sergeant Jackson and Patrolman Steen contend that no constitutional violations occurred, and even if they did they are entitled to qualified immunity. According to the Third Circuit, as stated in Couden v. Duffy, 446 F.3d 483 (3d Cir. 2005), in order to receive the benefits of said immunity:

> a court must first decide whether the facts, taken in the light most favorable to the plaintiff,

---

³ The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

> demonstrate a constitutional violation. <u>Curley v. Klem</u>, 298 F.3d 271, 277 (3d Cir. 2002) (citing <u>Saucier</u>, 533 U.S. at 201). If so, the court next determines whether the constitutional right in question was clearly established. <u>Id</u>. at 277 (citing <u>Saucier</u>, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. <u>Id</u>. at 205.

<u>Couden</u>, 446 F.3d at 492.

Therefore, in evaluating the qualified immunity issue, this Court will first ask whether the facts alleged show the officers deprived Plaintiff of a constitutional right. <u>Saucier v. Katz</u> 533 U.S. 194, 201 (2001). If the answer is yes, the Court must next ask if such right was clearly established at the time of the events in question, <u>i.e.</u>, in light of preexisting law - was the unlawfulness apparent. <u>Wilson v. Layne</u>, 526 U.S. 603, 614-15 (1999). This task must be "undertaken in light of the specific context of the case". <u>Saucier</u>, 533 U.S. at 201. The Court must also ask, would it "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted", <u>id.</u> at 202, or was there a "reasonable, but mistaken belief[] as to the facts establishing the existence of probable cause." <u>Id</u>. at 206.

An officer who develops a reasonable, articulable suspicion of criminal activity after a justified stop may expand the scope of an inquiry beyond the reason for the stop and detain the

vehicle and its occupants for further investigation. <u>United States v. Givan</u>, 320 F.3d 452, 458 (3d Cir. 2003). The Fourth Amendment requires only that the police articulate some minimal, objective justification for an investigatory stop. <u>Givan</u>, 320 F.3d at 458. Police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant. <u>Florida v. Meyers</u>, 466 U.S. 380, 381 (1984). The ready mobility of automobiles permits their search based only on probable cause to believe the vehicle contains contraband. <u>Ross v. United States</u>, 456 U.S. 798, 804-09 (1982). Further, the use of a well-trained drug sniffing dog during a lawful traffic stop does not generally implicate legitimate privacy interest protected by the Fourth Amendment. <u>Illinois v. Caballes</u>, 543 U.S. 405, 409 (2005).

In making a "reasonable suspicion" analysis, the Court must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. <u>U.S. v. Arvizu</u>, 534 U.S. 266, 273 (2002). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. <u>Id</u>.

Further the "plain view doctrine" allows a police officer to properly seize evidence of a crime without a warrant if: (1) the

officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent, <u>i.e.</u>, the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself. <u>United States v. Carey</u>, 172 F.3d 1268, 1272 (10th Cir. 1999). If an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, is sufficient to allow the officer to conduct a probable cause search of the vehicle. <u>United States v. Reinholz</u>, 245 F.3d 765, 776 (8th Cir. 2001)(approving search of vehicle, which contained drug paraphernalia clearly visible through vehicle's windows, that was parked in driveway of residence being searched); <u>United States v. Fladten</u>, 230 F.3d 1083, 1086 (8th Cir. 2000)(concluding that observation of an item commonly used in the manufacture of methamphetamine in plain view in the back seat of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence); <u>United States v. Garcia</u>, 205 F.3d 1182, 1187 (9th Cir. 2000)(concluding officer conducting traffic stop had probable cause to search tissue box after he observed a plastic bag sticking out from between the tissues, and because methamphetamine had already been found in the passenger's possession). Where an officer recognizes bags as

being the "size and type used to distribute drugs," it may be found that they were an "incriminating character" supporting a finding of probable cause. U.S. v. Sparks, 291 F.3d 683, 692 (10th Cir. 2002).

Taking the facts in the light most favorable to the Plaintiff, this Court holds that the facts are insufficient to establish a constitutional violation, as alleged by Plaintiff. The facts, which have not been disputed by Plaintiff, and the totality of circumstances, see Pall v. Kallerbach, 204 F.3d 425, 436 (3d cir. 2000), demonstrate why a reasonable officer would believe he had reasonable suspicion and probable cause to search the car. Patrolman Steen saw glassine baggies on the vehicle's floor. Smart conceded in his deposition there were plastic bags in the vehicle. Additionally, before the interior of the vehicle was searched, Patrolman Steen deployed his drug detection dog to the exterior of the motor vehicle. The dog "alerted" positive to both the front passenger door and the vehicle's truck. The alerts were consistent with prior alerts which had revealed the presence of controlled dangerous substances in a motor vehicle.

Based on this record, the Court cannot find that any constitutional violations occurred.[4]

---

[4] The Court assumes, for purposes of this summary judgment motion, that Plaintiff had standing to challenge the search. Additionally, at his deposition, Plaintiff testified that Defendant Sergeant Jackson asked him to sign a consent search form, which he refused to sign. He also testified that once he

However, the court notes that even if a constitutional violation did exist, qualified immunity shields Defendants Steen and Jackson from liability. Qualified immunity shields law enforcement personnel from suit for damages if a reasonable officer could have believed the action at issue to be lawful, in light of clearly established law and the information the officers possessed. <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. <u>Id</u>.

The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Id</u>. at 229. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued. <u>Id</u>.

As set forth above, Patrolman Steen and Sergeant Jackson reasonably, even if mistakenly, believed they had probable cause to search the car and, therefore, would be entitled to qualified immunity even assuming a constitutional violation.

---

refused, he was forced to stand out in the bitter cold weather until he relented to allow the search. Even assuming these facts, the officers had sufficient probable cause, <u>e.g.</u> the baggies in plain view and the canine dog hit, that Plaintiff's consent was unnecessary. To the extent Plaintiff alleges that the individual Defendants targeted him because of his race (that is, racial profiling in violation of the Equal Protection Clause), the record is totally devoid of any supportive evidence.

Turning to the remaining Defendants, the Township of Berlin and Police Chief Hayden, Plaintiff alleges that they both failed to screen, train, supervise, and discipline the officers on the Police Department and failed to implement proper policies.  In order to establish municipal liability under § 1983, plaintiff must prove the existence of a policy or custom that has resulted in a constitutional violation.  <u>Groman v. Township of Manalpan</u>, 47 F.3d 628, 637 (3d Cir. 1995).  Liability for failure to train subordinate officers will lie only where a constitutional violation results from "deliberate indifference to the constitutional rights of [the municipality's] inhabitants."  <u>Id</u>.

A failure to train, discipline or control can only form the basis for § 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.  <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 127 (3d Cir. 1998).  Furthermore, to establish deliberate indifference, a plaintiff must show that the municipality was put on notice, either actual or constructive of a deficiency in its policy or custom or of the need for a new policy or custom.  <u>Carroll v. Borough of State College</u>, 854 F.Supp, 1184 (M.D. Pa.),

aff'd, 47 F.3d 1160 (3d Cir. 1994); Fulkerson v. City of Lancaster, 801 F.Supp. 1476, 1483 (E.D. Pa. 1992). A plaintiff must establish that despite a municipality's knowledge of prior incidents, it deliberately and intentionally failed to adopt an adequate policy or acquiesced to long-standing custom. Carroll, 854 F.Supp. at 1199; Malignaggi v. County of Gloucester, 855 F.Supp. 74 (D.N.J. 1994); Timko v. City of Hazelton, 665 F.Supp. 1130 (M.D. Pa. 1986). Here, the record is devoid of any such evidence, and thus summary judgment will be granted.

The record is also patently deficient as to Chief Hayden. To prevail in a civil rights suit against a supervisory official, a plaintiff may not predicate the defendants' liability solely on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). A supervisory official may be personally liable under § 1983, where he either directed others to violate a plaintiff's constitutional rights or had knowledge of, and acquiesced in, his subordinates' violations. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). There is no evidence relating to Hayden whatsoever, and thus summary judgment will be granted.

**Conclusion**

For the aforementioned reasons, Plaintiff has failed to demonstrate that an issue of material fact exists as to the liability of Defendants Steen, Jackson, Township of Berlin and

Hayden.  Thus, each of the Defendants is entitled to summary judgment.  An accompanying Order will issue this date.


                                                    s/Renée Marie Bumb
                                                   RENÉE MARIE BUMB
                                                   United States District Judge

Dated: December 5, 2008